**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL ACTION NO. 5:14-CR-5-KKC** |
| **Plaintiff,** | |
| **V.** | **MEMORANDUM AND OPINION** |
| **SHERYL BRUNER,** | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on Defendant Sheryl Bruner's motion to revoke detention order (DE 18), which the Court has already denied at a hearing held on February 20, 2014. At the hearing, the Court explained it would issue a memorandum briefly detailing the reasons for the denial of Bruner's motion.

Judge Wier conducted a two-day detention hearing in this matter on January 15 and 16, 2014. The Court reviews the Magistrate Judge's order de novo. *United States v. Price*, No. 12-9-KKC, 2013 WL 4400524 a *1 (E.D. Ky. 2013). In doing so, the Court has reviewed the transcript of the detention hearing obtained from the court reporter, Judge Wier's detention order (DE 13), the exhibits from the detention hearing, Bruner's motion (DE 18), her reply (DE 25), and the Government's response (DE 22).

In her motion seeking a review of Judge Wier's order (DE 13), Bruner does not discuss any evidence not already presented at the detention hearing. When asked at the February 20th hearing whether Bruner had any additional evidence to present, counsel responded that Bruner did not. Accordingly, the Court found that another hearing would not assist in considering Bruner's motion.

In the detention order, Judge Wier correctly found that this is a non-presumption case under the Bail Reform Act of 1984. Thus, Judge Wier properly considered the factors set forth in 18 U.S.C. § 3142(g), and found that no release condition or combination of conditions will reasonably assure Bruner's appearance at trial. (DE 13). Judge Wier did not find sufficient evidence of dangerousness. The Court agrees.

First, the Court considers the nature and circumstances of offenses charged. As Judge Wier indicated, the charges against Bruner predominately involve dishonesty and falsehood. The crimes also demonstrate financial sophistication and access to large sums of money. In fact, since Bruner's detention hearing, the United States has added several counts to the superseding indictment that increase the Court's concern about Bruner's dishonesty and motive for flight. The United States has now charged Bruner with making false declarations to the bankruptcy court, as well as making false statements to the United States Probation Office. These new charges add further concern that no set of conditions could assure that Bruner appears in Court.

Next, the Court must consider the "weight of the evidence," which refers to evidence of dangerousness or flight risk, not evidence of a defendant's guilt of the underlying charge. *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). In her motion, Bruner suggests that the magistrate judge considered evidence of her guilt of the underlying charges, not evidence of her risk of flight. However, evidence of Bruner's dishonesty, whether or not it is a part of the underlying crime is relevant to the determination of whether Bruner is a likely flight risk. As Judge Wier indicated, "Still, a strong case as to underlying conduct logically impacts the view of an actor's dangerousness and the flight-risk calculus the court must undertake." (DE 13, p.11). After reviewing the hearing transcripts and the exhibits presented at the hearing, the Court agrees that the United States made a strong showing of "flight-specific evidence, such as financial irregularities, access to cash, international ties, etc." (DE 13, p. 11).

At the detention hearing, Agent Baker testified that Bruner was dishonest about her ability to work so that she could receive SSI for a period of at least eight years. The evidence presented also indicates that Bruner was dishonest to the bankruptcy court, which is now an additional count on the superseding indictment. The testimony from Bruner's detention hearing also establishes significant international travel. Bruner's sole witness even testified that she and Bruner had been on trips to Mexico, Europe, and Jamaica, despite the fact that Bruner only disclosed her visit to Mexico to the United States Probation Office. The great weight of the evidence establishes that Bruner lied to government agencies for years and has continued her dishonesty even in her dealings with the court system. The amount of evidence pointing to Bruner's deceit creates grave concern that Bruner cannot be trusted to be honest with the Court and appear timely in court.

As to the third factor, Bruner's history and characteristics, it is true that Bruner only has one misdemeanor conviction for criminal mischief in 2009, and Bruner is likely the predominate caregiver to her mother and disabled sister. However, while Bruner may care very deeply for her family and while that may weigh in her favor, the great weight of the evidence presented at the detention hearing demonstrates Bruner's extreme dishonest tendencies, her financial savviness, and her knowledge of international travel. Bruner was untruthful to the United States Probation Office about her international travel and her use of illicit drugs; both marijuana and cocaine were found in locations in her home that were associated with Bruner. Further, Bruner's own witness testified that Bruner used marijuana occasionally. Bruner also engaged in fraudulent transactions in violation of bankruptcy orders, and Mr. Rogers, who works at one of Bruner's banking institutions, testified that Bruner was questioning whether particular funds could be subject to a lawsuit against Bruner personally. All of which further indicates that while Bruner may be a loving daughter and sister, her primary motive seems to be avoiding liability and promoting her own financial gain at whatever cost.

The fourth factor, nature and seriousness of danger posed by release, is not at issue here, as the Court has determined that there was not sufficient evidence to show that Bruner would be a danger if released. Ultimately, Bruner's ability to manage money, her ability to commit dishonest acts against the government for an extended period of time, her past experience with international travel, and her motive to avoid the consequences of not only the charges against her, but also her financial problems in bankruptcy court, all demonstrate to this Court that no set of circumstances will assure her appearance.

Bruner argues in her motion that the surrender of her passport and home detention with electronic monitoring will assure her appearance. However, as the United States points out, electronic monitoring only alerts flight; it does not stop it. Moreover, the surrender of Bruner's passport only assures the Court she will not legally enter another country. Given Bruner's lengthy dishonesty to the government and even to the Court itself, the Court is unconvinced that either measure will assure the Court of Bruner's appearance.

Accordingly, as held in the February 20th hearing, Bruner's motion to revoke the detention order (DE 18) is **DENIED**.

This 4th day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY