Eastern District of Kentucky
**FILED**
JUN 27 2014
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br><br> V. <br><br> SHERYL BRUNER, <br>     Defendant. | CRIMINAL ACTION NO. 5:14-CR-5-KKC <br><br><br> **MEMORANDUM, OPINION, & ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Sheryl Bruner's motion for a new trial (DE 70) and Bruner's motion to dismiss Count 15 of the First Superseding Indictment (DE 55). For the reasons explained below, the Court will deny Bruner's motion for a new trial (DE 70), and will grant Bruner's motion to dismiss Count 15 of the first superseding indictment (DE 55).

## I. BACKGROUND

A jury found Bruner guilty (DE 66) on fourteen counts of the superseding indictment, including charges of stealing money from the United States, Social Security fraud, making false statements in relation to her Social Security disability application and renewal, knowingly and fraudulently making a false declaration in a bankruptcy proceeding, and several counts of laundering money. (DE 28, 65). The United States presented evidence that between 2003 and 2013 Bruner applied for and received Social Security Disability benefits even though she was gainfully employed and was running her own business during much of that time. The United States also presented evidence that Bruner made false declarations when she filed for bankruptcy. The Government then

showed that Bruner engaged or attempted to engage in several financial transactions with proceeds from bankruptcy fraud.

During trial, Bruner's counsel attempted – unsuccessfully – to produce evidence of an advice of counsel defense. Bruner invoked her Fifth Amendment right not to testify at trial. While the Court agreed to give the "good faith instruction" as to the bankruptcy count, it declined to instruct the jury as to the advice of counsel defense. (DE 65, Instruction 19); (DE 82, p. 260). The Court also granted the United States' motion to exclude video clips of Bruner's mother and sister. (DE 57). Bruner now moves this Court for a new trial based on the Court's refusal to instruct the injury on the advice of counsel defense and the Court's decision to exclude video clips of Bruner's disabled sister and elderly mother.

## II. ANALYSIS

### A. Fed. R. Crim. P. Rule 33 Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. R. 33. Whether to grant a defendant's motion for new trial is within "the sound discretion of the trial judge." *United States v. Barlow*, 693 F. 2d 954, 966 (6th Cir 1982). Bruner bears the burden of showing that a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

### B. Advice of Counsel Instruction

An advice of counsel instruction requires a showing of "(1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice." *United States v. Lindo*, 18 F.3d, 353, 356 (6th Cir. 1994). "[A] defendant who identifies any evidence supporting the conclusion that he or she has fully disclosed all pertinent facts to counsel,

2

and that he or she has relied in good faith on counsel's advice, is entitled to a reliance jury instruction." *Id.* "It is well established than an [advice of counsel] instruction should not be given if it lacks evidentiary support or if it's based on mere suspicion or speculation." *Id.* (internal citations and quotations omitted). Here, Bruner failed to lay a sufficient evidentiary foundation to merit the instruction.

Bruner's argument for an advice of counsel instruction is complicated in that she insists she relied on a patchwork of advice from two separate attorneys who worked on two very different matters several years apart. The factual applicability of an advice of counsel defense is further obscured by the fact that Bruner was charged with several separate crimes. In her motion, Bruner lumps her arguments together, as though she had only one attorney and was charged with only one crime. In her motion, she insists, "The trial transcript contains a plethora of support for both required elements to merit the advice to [sic] counsel instruction." (DE 86, p. 3). Bruner's argument is misplaced. Bruner failed to present any evidence at trial to establish either element of the advice of counsel instruction as to any particular charge.

While the Sixth Circuit enumerates only two elements of the advice of counsel defense – (1) disclosure of all pertinent facts to counsel and (2) good faith reliance on counsel's advice – such full disclosure and reliance on advice must be related to the particular wrongful action for which a defendant is charged. As the Government pointed out in its brief, it would be nonsensical to suggest otherwise. Although the various circuits describe the elements of the advice of counsel defense in different ways, courts generally agree that the advice and good faith reliance must relate to the wrongful acts at issue in the case. *See United States v. West*, 392 F.3d 450, 457 (D.C. Cir. 2004) (requiring that an attorney advise the defendant that the specific contemplated action is legal); *Markowski v.*

3

*S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994) (requiring a defendant to show that he sought and received advice as to the legality of his conduct); *United States v. Al-Shahin*, 474 F.3d 941, 947 (7th Cir. 2007) (requiring a defendant to show that he sought advice about the lawfulness of his future conduct and an accurate disclosure of material facts); *United States v. Smith*, 7 Fed. Appx. 772, at *1 (9th Cir. 2001) (requiring a defendant to show that he received advice "as to the specific course of conduct that he followed"); *United States v. Polytarides*, 584 F.2d 1350, 1352 (4th Cir. 1978) (requiring that the defendant show that he secured the advice of the lawfulness of his conduct at issue).

Similarly, the Sixth Circuit in *United States v. Lindo* affirmed the district court's decision not to include the advice of counsel jury instruction because the defendant failed to link counsel's advice to the conduct of the defendant at issue. 18 F.3d, at 356. The Court reasoned, "At best, Lindo has shown only that he has in the past relied on Osserman's advice concerning stock sales. No evidence establishes, however, that Lindo provided *all of the pertinent facts regarding the stock sales at issue in this case* . . . ." *Lindo*, 18 F.3d at 356–57 (emphasis added). Thus, to receive an advice of counsel instruction, a defendant must show that he disclosed all relevant facts relating to his wrongful acts and that he relied on counsel's advice with regard to those acts.

Here, the charges against Bruner can be separated into two distinct categories. Counts one through three relate to social security fraud, and counts four through fourteen relate to bankruptcy fraud and subsequent money laundering. To receive the advice of counsel instruction, Bruner needed to show that she disclosed all pertinent facts with regard to each of her wrongful actions.

Bruner did not present any evidence at trial to establish Bruner asked either of her attorneys about whether she should disclose her trusts, employment, vehicles, or other

4

assets when applying for and renewing her Social Security benefits. At trial, Bruner's trial counsel asked her former attorney William Legg, who had performed estate planning and corporate work for Bruner in the early 2000s, specifically about Bruner's social security benefits. The exchange went as follows:

> Q: Okay. Did she ever consult with you about her receiving income from any program administered by the Social Security Administration?
> A. Yes.
> Q. Okay. All right [sic]. And did she ask you whether she could receive that income?
> A. I was not knowledgeable enough to know. That's why we -- we and her, that current accountant made sure she filed -- she gave copies of her tax returns to Social Security as soon as they were prepared each year.
> Q. And who was supposed to do that, the accountant?
> A. The accountant prepared them, and then we, you know, I think Sheryl -- Sheryl was required to provide them that -- those returns.
> Q. All right. And do you know if the accountant was the one that was responsible to send the returns to the Social Security Administration?
> A. No, I think that was Sheryl. I think she was provided a copy.
> Q. All right. All right. And -- but you weren't knowledgeable enough to know the ins and outs of whether she qualified for the -- for the Social Security?
> A. No. But I -- I thought -- I thought we should make sure they had the tax returns so they could make the decisions.

(DE 81, p. 109–110). Thus, the evidence indicates that Bruner made only general inquires about Social Security benefits and that Mr. Legg informed her that he was not knowledgeable enough about Social Security benefits to assist her. Bruner's bankruptcy attorney, Mr. Justin O'Malley, did not testify at all as to Bruner's Social Security benefits and testified that Bruner provided him with no information regarding many of her assets. Bruner invoked her Fifth Amendment rights at trial and did not testify. There was no further evidence relating to the advice of counsel instruction and the Social Security counts. Thus, Bruner did not disclose all the relevant information relating to her actions in the

5

Social Security matter, and there was no evidence at all to indicate she relied on either attorney's advice about what to disclose on her Social Security benefits application and renewal. In fact, she disregarded Mr. Legg's advice to file her tax returns with the Social Security Administration.

The thrust of Bruner's motion for a new trial relates to the bankruptcy count of the indictment. Bruner argues that Mr. Legg advised her that trusts they created were not legally owned by her personally, and that Mr. O'Malley advised her that an irrevocable trust for the benefit of someone other than the debtor generally would not be deemed property of her bankruptcy estate. Thus, Bruner argues she did not disclose the trusts as property in her bankruptcy application because she didn't think she needed to do so. Bruner's theory is punctured by a factual pitfall; the Government presented evidence at trial to show that Bruner was dishonest during the bankruptcy proceedings by not disclosing over $200,000 in cash that was located in her home, as well as failing to disclose her Social Security benefits and various other items she owned. Thus, her non-disclosure in bankruptcy court did not merely relate to just the trusts. Moreover, Bruner's argument suffers from the same fatal flaw as the defendant's argument in *Lindo*. In affirming the district court's denial of an advice of counsel instruction, the Court of Appeals in *Lindo* specifically rejected the type of argument Bruner advances. Again, the Court of Appeals reasoned,

> At best, Lindo has shown only that he has in the past relied on Osserman's [his attorney's] advice concerning stock sales. *No evidence establishes, however, that Lindo provided all of the pertinent facts regarding the stock sales at issue in this case to Osserman . . .* As opposed to the unique facts in *Duncan*, moreover, no evidence establishes that Osserman was already in possession of all of the pertinent facts regarding the sales by the banks of the Kenilworth stock and that Lindo was aware that Osserman was so informed. *Because Lindo failed to*

> *provide any evidence of full disclosure, he cannot claim good faith reliance.*

*Lindo*, 18 F. 3d at 356–57 (emphasis added).

In *United States v. Ressor*, 10 Fed. Appx. 297. 308 (6th Cir. 2001) the Court of Appeals again rejected the notion that an attorney's general advice based on a defendant's incomplete disclosure of the facts at issue can warrant an advice of counsel instruction. In *Ressor*, the defendants formed a corporation, which was ultimately used to solicit welfare recipients living in public housing to file false tax returns, claiming a tax credit to which they were not entitled to receive. *Id.* at 300. At trial, the defendants requested and were denied an advice of counsel instruction. *Id.* at 303. The Court of Appeals affirmed and reasoned, "the evidence appears to indicate that Allison [the attorney] only told defendants that the purported object of FTA [corporation] was legal; this would have involved the identification of people who genuinely qualified for an EIC [credit] and the taking of a commission for obtaining the refund. Reesor never discussed with Allison the actual details of the operation targeting recipients of public assistance." *Id.* at 308.

Here, Bruner complains that at her initial meeting with O'Malley, she told him that her main concern was ensuring that filing bankruptcy would not affect the trusts that benefited her mother and sister. In response, Mr. O'Malley explained *generally* that the irrevocable trusts for the benefit of someone other than the debtor were unaffected. Bruner insists that Mr. O'Malley should have "followed up" about the trusts. However, Bruner mistakes her dissatisfaction with Mr. O'Malley's method of practice for a good faith reliance on counsel defense. Mr. O'Malley never saw the trust documents; Bruner never disclosed the trusts on her intake information form so that Mr. O'Malley could have inquired more about them. Moreover, there was a multitude of other items Bruner failed to disclose to

7

O'Malley and the bankruptcy court, including over $200,000 in cash that was located in Bruner's home. Therefore, Bruner failed to establish the first element of an advice of counsel defense because she did not fully disclose all the pertinent facts to O'Malley.

In addition to all the pitfalls of her argument, Bruner also never testified on her own behalf. Bruner is fully entitled to invoke her Fifth Amendment right not to testify. The Court of Appeals has noted, "the standard of evidence necessary to warrant an instruction cannot include an absolute requirement that the [defendant] must testify, for that would burden the [defendant's] own Fifth Amendment right against self-incrimination." *United States v. Duncan*, 850, F.2d 1104, 1115, n. 9 (6th Cir. 1988). However, absent Bruner's own testimony to contradict her attorneys' testimony that she did not fully disclose all the relevant facts and did not rely in good faith on their advice, there was simply no evidence to warrant an advice of counsel instruction. *See Lindo*, 18 F. 3d at 357 ("[A]bsent Lindo's testimony, he could not point to other evidence adduced in the case indicating that he relied in good faith on his counsel's advice.").

In short, Bruner's theory for receiving the advice of counsel instruction has little footing in the facts established at trial, and is an attempt to quilt together general advice from two attorneys. There was neither factual evidence, nor legal support for an advice of counsel instruction in this case.

### C. Exclusion of Videos

Prior to trial, Bruner submitted to the Court and opposing counsel two equally disheartening videos that she intended to introduce at trial. One video depicted her handicapped sister hitting her head on the passenger window of a car. In the other video, Bruner's mother, Mary Newton, explained that she was confused and didn't remember where she was. Bruner argues that the Court should not have excluded the videos for two

8

reasons. First, Bruner argues the videos lend credibility to Bruner's intentions behind creating the trust and keeping cash in the home. Second, she argues the video lends credibility to Newton's testimony regarding why the $200,000 in cash was kept at the home for the care of Bruner's sister.

The videos represent a disturbing reality that was uncontested at trial: Bruner's mother and sister were in need of supervision and care. But it is almost inconceivable how either of the videos could be relevant to the issues of the trial. The issues at trial were simple: Did Bruner intentionally defraud the Social Security Administration? Did Bruner intentionally conceal or lie during her bankruptcy proceedings? And did she launder or attempt to launder proceeds of bankruptcy fraud? Bruner attempted to show at trial that she did not have the intent to commit the crimes because she was confused about the Social Security and bankruptcy forms, as well as the legal effect of her money and belongings predominantly being held in trusts and LLCs.

As to Bruner's first argument, that the videos would lend credibility to why she established the trusts, her attorneys both testified to Bruner's desire to ensure that her mother and sister were cared for. Moreover, the United States never challenged that Bruner's mother and sister were in need of care. As for Bruner's second argument, that the videos would support Newton's testimony that the cash had been left to help care for herself and Bruner's sister, such an assertion simply isn't true. Again, the United States never challenged that Bruner's sister was severely handicapped or that her mother was elderly and in need of extensive care, which is all the videos depicted. Newton's testimony was that her husbands left the money for the care of herself and her daughter. The United States merely challenged why the money was left in cash, not the motivation behind her husbands leaving the money to provide care for the family.

To the extent the videos were at all relevant, their relevance was heavily outweighed by the risk of unfair prejudice they would cause to the Government. Fed. R. Evid. R. 403. The video of Bruner's sister displayed a severely handicapped woman hitting her head on the car window, and the video of Bruner's mother showed an elderly and very confused woman. The primary impact of the videos would be to garner sympathy from the jurors and distract from the issues at trial. Bruner had every right to champion her theory of lack of intent for the crimes for which she was charged, but she did not have a right to show the videos of her family in an effort to justify her actions.

### D. Motion to Dismiss Count 15

Prior to trial Bruner moved to dismiss Count 15 of the First Superseding Indictment (DE 55) arguing that it was a duplicitous indictment. The United States has not responded to the motion. Consistent with Local Criminal Rule 12.1(d) the Court will grant Bruner's motion.

### III. CONCLUSION

Accordingly, the Court **HEREBY ORDERS** as follows:

(1) Bruner's motion for a new trial (DE 70) is **DENIED**; and

(2) Bruner's motion to dismiss Count 15 of the superseding indictment (DE 55) is **GRANTED**.

This 27th day of June, 2014.



Signed By:
Karen K. Caldwell
United States District Judge